**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

KEVIN REAGAN,              )
                                  )
          Plaintiff,       )
                                    )
      v.                )        Civil Action No. 4:23-cv-158
                                    )
JOHN RATCLIFFE, Director,    )
Central Intelligence Agency,    )
                                  )
          Defendant.     )
                                  )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Kevin Reagan, by and through undersigned counsel, hereby submits his Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 61), and respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

**I.      Introduction**

Plaintiff Kevin Reagan filed a Complaint in this Court on December 20, 2023 (refiled as Dkt. 43), against the Central Intelligence Agency ("Agency" or Defendant), alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA). Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on August 14, 2024 (Dkt. 44-45), arguing that Plaintiff's Complaint failed to allege sufficient facts to support a plausible claim of age discrimination or retaliation and should be dismissed. Plaintiff filed an opposition (Dkt. 52), Defendant filed a reply (Dkt. 53), and the Court on March 18, 2025, issued an Order (Dkt. 56) granting Defendant's first motion to dismiss and dismissing the original complaint without

prejudice, providing leave for Plaintiff to amend his complaint.  After completing the review process by the Agency's Prepublication Classification Review Board (PCRB), Plaintiff filed his Amended Complaint (Dkt. 60), to which Defendant has again filed a motion to dismiss (Dkt. 61-62).  In his Amended Complaint, Mr. Reagan alleges age discrimination under the Age Discrimination in Employment Act (ADEA) concerning the Agency's termination of his employment on or about June 22, 2021, and further alleges retaliation in violation of the ADEA concerning the Agency terminating him from a project at the Agency on July 8, 2022. *See* Amended Complaint, Dkt. 60, especially Counts I (age discrimination) and II (retaliation), at pp. 8-9 of Dkt. 60.  As described in this Memorandum, Plaintiff has alleged sufficient facts to support a plausible claim of age discrimination and retaliation, and accordingly, Defendant's second Motion to Dismiss (Dkt. 61) should be denied.

## II.    Procedural History

As noted in his Amended Complaint, Mr. Reagan filed a formal EEO complaint with the Agency on September 20, 2021, alleging discrimination on the basis of age concerning his removal (termination) from the Agency on June 30, 2022. *See* Amended Complaint, Dkt. 60, at 2-3, para. 7.  Instead of accepting Mr. Reagan's claims for investigation, the Agency dismissed Mr. Reagan's initial EEO complaint. *Id*.  The Agency never investigated Mr. Reagan's EEO complaint to adduce the crucial facts of his original termination claim.  Instead, the Agency dismissed Mr. Reagan's initial EEO complaint, and after review by the EEOC's appellate unit, the Office of Federal Operations (OFO), Mr. Reagan timely filed his consolidated claims in this Court. *Id*. at paras. 7-8.

While Mr. Reagan's appeal of the Agency's dismissal was pending before the OFO, he pursued a second EEO complaint, filed as a formal EEO complaint on December 16, 2022, alleging discrimination on the basis of his age, disability, and prior EEO activity (retaliation), for being

terminated from a project at the Agency and for being thwarted from onboarding at the Agency. *See* Amended Complaint, Dkt. 60, at 3, para. 8. The retaliation claim is based on Mr. Reagan's first EEO complaint as his protected activity. This second EEO complaint became an EEOC case, and the parties participated in an initial conference and initiated written discovery. *Id.* No discovery responses were exchanged, and no depositions were taken. As the OFO's September 21, 2023 Decision in favor of the Agency on Plaintiff's first EEO complaint triggered a filing deadline in this Court, Plaintiff withdrew his EEOC case (concerning his second EEO complaint) from the EEOC on December 20, 2023 and filed his Complaint in this Court on the same date. *Id.* at paras. 7-8. There has been no discovery concerning the underlying EEO complaints, and Mr. Reagan's primary, initial EEO complaint was never investigated by the Agency.

Plaintiff's two EEO complaints at the EEO administrative level result in two main claims, for: (1) discrimination on the basis of age concerning his removal (termination) from the Agency on or about June 22, 2021, and (2) discrimination on the basis of his prior EEO activity (retaliation), for being terminated from a project at the Agency on July 8, 2022, at the end of the onboarding process. *Id.* at paras. 31-35. Age discrimination applies to the first claim, and retaliation applies to the second claim.

## III.    Argument

### A.  Standard of Review

Courts in this Circuit have determined that in considering a Defendant's Motion to Dismiss under Rule 12(b)(6), the Court must accept plaintiff's "well-pled" allegations as true and draw all reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. U.S.*, 120 F.3d 472, 473 (4th Cir. 1997). "A complaint should not be dismissed 'unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts

which could be proved in support of his claim.'" *Assa'ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989). A complaint should thus not be dismissed merely because the court doubts that the plaintiff will ultimately prevail; "'[s]o long as a plaintiff colorably states facts which, if proven, would entitle him to relief, the motion to dismiss should not be granted.'" *Id.*; *see also Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) ("To survive a motion to dismiss, a plaintiff's factual allegations, taken as true, must 'state a claim to relief that is plausible on its face.' . . . [The allegations in the complaint] need only give the defendant fair notice of what the claim is and the grounds on which it rests.") (*citing Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012); *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)).

## B. The Court Should <u>Not</u> Dismiss Count I of Plaintiff's Complaint for Failure to State a Claim.

In Defendant's Memorandum in support of its second motion to dismiss (Dkt. 62 at 7-16), the Agency argues that the Court should dismiss Plaintiff's age discrimination claim under the ADEA (Count I). However, Plaintiff alleged sufficient facts in his Amended Complaint (Dkt. 60) to support a plausible claim of age discrimination, including presenting allegations supporting a *prima facie* case of age discrimination.

In its Motion (at 8-9), Defendant cites three cases which cite *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582 (4th Cir. 2015), which sets forth a plaintiff's burdens to overcome a Rule 12(b)(6) motion to dismiss. *McCleary-Evans* provides:

> In *Swierkiewicz*, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination ... to survive [a] motion to dismiss," 534 U.S. at 515, 122 S.Ct. 992, because "[t]he prima facie case ... is an evidentiary standard, not a pleading requirement," *id*. at 510, 122 S.Ct. 992, that may require demonstrating more elements than are otherwise required to state a claim for relief, *id*. at 511–12, 122 S.Ct. 992. The Court stated that requiring a plaintiff to plead a prima facie case would amount to a "heightened pleading standard" that would conflict with Federal Rule of Civil Procedure 8(a)(2). *Id*. at 512, 122 S.Ct. 992. As the Court explained:

> [I]t is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the McDonnell Douglas framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case.

*Id*. at 511, 122 S.Ct. 992. Accordingly, the Court concluded that "the ordinary rules for assessing the sufficiency of a complaint apply," referring to Federal Rule of Civil Procedure 8(a)(2). *Id*.

*McCleary-Evans,* 780 F.3d at 584-585.

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), and *McCleary-Evans* provide that Plaintiff Kevin Reagan need not plead a *prima facie* case of discrimination to survive a motion to dismiss, as the *prima facie* case is an evidentiary standard, not a pleading requirement.  However, *McCleary-Evans* notes that in order to survive a motion to dismiss, a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level (citing to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)):

> In light of *Swierkiewicz*, McCleary–Evans appropriately argues that the district court erred in its analysis by requiring her to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss. But the district court's erroneous analysis in this case will not save the complaint if, under the "ordinary rules for assessing the sufficiency of a complaint," *Swierkiewicz*, 534 U.S. at 511, 122 S.Ct. 992, it fails to state a plausible claim for relief under Title VII. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir.2010) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, *see Swierkiewicz* , '[f]actual allegations must be enough to raise a right to relief above the speculative level' " (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 )).

> Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal quotation marks and citation omitted). But this rule for pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Instead, a complaint must contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *Id*.; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (holding that a complaint "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement' " does not "suffice" (quoting

*Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 )). The Supreme Court has accordingly held that Rule 8(a)(2) requires that "a complaint ... contain[ ] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " in the sense that the complaint's factual allegations must allow a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 (emphasis added) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955 ); *see also Coleman*, 626 F.3d at 191 (finding a complaint inadequate because its allegations "fail[ed] to establish a plausible basis for believing ... that race was the true basis for [the adverse employment action]").

*McCleary-Evans,* 780 F.3d at 585.

Here, Plaintiff's Amended Complaint presents a short and plain statement of the claim showing that Plaintiff is entitled to relief for age discrimination and giving fair notice to Defendant, per *Twombly*.  Plaintiff's Complaint does not consist of mere labels and conclusions, nor is it a formulaic recitation of the elements of a cause of action.  Plaintiff's complaint provided specific facts of age discrimination such that the Court may draw a reasonable inference that Defendant is liable for age discrimination:

15. Throughout his 16-year career at the Agency, Mr. Reagan received positive feedback and accolades concerning his performance.

16. There were no performance evaluations for Mr. Reagan's position at the Agency.  In the 16 years that Mr. Reagan worked for the Agency, he never received a performance evaluation.  However, Mr. Reagan received positive feedback about his performance from his supervisors for his entire tenure at the Agency, including during the last three years.  In his final three years (and throughout his tenure at the Agency), Mr. Reagan received positive comments about his performance from his supervisors as well as positive student critiques.  Mr. Reagan established a record of excellent job performance at the Agency.

17. While there were no performance evaluations for Mr. Reagan's position at the Agency, an indication of such performance is that Mr. Reagan's employment contracts were renewed continually throughout his 16-year career at the Agency.  Other instructors with performance issues did not have their employment contracts renewed.  In addition to his positive performance feedback, Mr. Reagan's continuing work at the Agency demonstrates his positive work performance.  Finally, while working at the Agency, Mr. Reagan never received documentation akin to a negative performance review, or a performance improvement plan, or a performance memo alleging performance deficiencies.

18. On or about June 22, 2021, Mr. Reagan had a meeting with his supervisors Marc and Johnny and another federal employee. They informed Mr. Reagan that he was being removed, but they refused to provide any explanation for the removal. Mr. Reagan's supervisors had not raised any concerns with him previously in a formal way, such as formal counseling or anything in writing, and Mr. Reagan had no prior notice of any concerns that would justify his removal. In fact, his second-level supervisor Johnny had sat in on several of Mr. Reagan's classes and had not raised any issues.

19. In his tenure at the Agency, Mr. Reagan observed younger instructors being hired as older instructors were pushed out. These younger instructors were in their 30s and 40s while the older instructors were more than 10 years older. For instance, Mr. Reagan was 61 at the time of his removal and was at least 20 years older than younger instructors being hired at that time.

20. Upon information and belief, Mr. Reagan was replaced by an instructor who was over 10 years younger than he at the time of his removal.

21. Instructors over 10 years younger than Mr. Reagan were treated more favorably than he. For instance, Mr. Reagan's supervisor Marc asked Mr. Reagan and another older instructor to both work half-time, in order to free up a position for a younger employee to be hired. On information and belief, other older instructors were pushed to reduce their hours to half-time as well.

22. Besides Mr. Reagan, other instructors over the age of 40 were removed without warning or explanation or were constructively discharged.

23. Older instructors have been targeted for removal or a reduction in their working hours, while younger instructors over 10 years younger have been brought in by management.

24. The Agency's removal of Mr. Reagan has caused lost salary and benefits, damage to his career and reputation, and lost job opportunities. Defendant's discriminatory actions constitute disparate treatment of Mr. Reagan on the basis of his age and protected EEO activity. Alternatively, Defendant's actions have resulted in a disparate impact on Mr. Reagan due to his age and protected EEO activity. As noted in the Causes of Action, Mr. Reagan is claiming age discrimination with regard to his removal in June 2021 and retaliation with regard to being terminated from a project in July 2022.

*See* Amended Complaint, Dkt. 60, at 5-7, paras. 15-24.

Plaintiff observed younger instructors being hired as older instructors were pushed out; older instructors being asked to work half-time so that a younger employee could be hired; removal of other instructors over the age of 40 without warning or explanation; and older instructors being targeted for removal or reduction in their working hours. These facts establish the differential

treatment of older employees like Mr. Reagan vis a vis the preferential treatment of younger employees, and all of Plaintiff's factual allegations must be accepted as true in an assessment of Defendant's motion to dismiss. *See Erickson v. Pardus*, 127 S. Ct. 2197, 167 L.Ed.2d 1081, 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint") (citing to *Twombly*, at 555 – 556, *Swierkiewicz*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Moreover, the Court must draw all reasonable inferences in Plaintiff's favor. *See Byam v. Ocean Enter*. 589, 23-1193 (4th Cir. Feb 26, 2024) (noting that the district court must accept well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor) (citing to *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017). In sum, the Court must accept Mr. Reagan's allegations as true and draw all reasonable inferences in his favor, with the stipulation from *Iqbal* that the Complaint should contain sufficient facts that, accepted as true, state a claim for relief that is plausible on its face. *See id*. (*Bryam*). Here, Mr. Reagan has pled facts of age discrimination that must be taken as true, and justify his claim for relief, as he was removed (terminated) from the Agency in 2021, after working successfully there since 2005, gaining positive feedback from his supervisors and accolades concerning his performance, establishing a record of excellent job performance at the Agency, including in his last three years. *See* Amended Complaint, Dkt. 60, at paras. 9-10, 15-16. Despite this excellent job performance with no performance concerns raised by his supervisors, Mr. Reagan was terminated from the Agency without explanation on June 22, 2021. *Id*. at para. 18. This was typical of the treatment of older instructors at the Agency, who were pushed out in favor of younger instructors in their 30s and 40s who were more than 10 years

younger than the older instructors. *Id.* at para. 19.  For instance, Mr. Reagan was 61 at the time of his removal and was at least 20 years older than younger instructors being hired at that time. *Id.* Mr. Reagan also plainly alleged in his Amended Complaint that he was replaced by an instructor who was more than 10 years younger than he at the time of his removal; instructors more than 10 years younger than Mr. Reagan were treated more favorably, e.g., in terms of working hours; other instructors over the age of 40 besides Mr. Reagan were removed without warning or explanation or were constructively discharged; older instructors were targeted for removal or reduction in their working hours while younger instructors more than 10 years younger were brought in by management. *Id.* at paras. 20-23.  All reasonable inferences must be drawn in Plaintiff's favor, and the Court should find, at this stage, that Plaintiff has pled allegations of age discrimination which justify a plausible claim for relief.

As noted above, this Court should follow the pleading standards from *Iqbal* and *Twombly*, and not require Plaintiff to <u>prove</u> the *prima facie* elements of his case at the motion to dismiss stage. *See McCleary-Evans,* 780 F.3d at 585.  However, Plaintiff will briefly examine the *prima facie* elements to demonstrate that he has alleged sufficient facts to state a claim under the ADEA in this 12(b)(6) inquiry.

In *Loose v. CSRA Inc.*, Case No. 19-2394, 2021 U.S. App. LEXIS 29405 (4th Cir. Sep 29, 2021), the Fourth Circuit noted the *prima facie* elements of an ADEA termination claim: (1) the plaintiff is a member of a protected class, (2) he suffered an adverse employment action (such as discharge), (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) his position remained open or was filled by a similarly qualified applicant outside the protected class. *See Loose v. CSRA Inc.*, Case No. 19-2394, 2021 U.S. App. LEXIS 29405 (4th Cir. Sep 29, 2021) (citing *Baqir v. Principi*,

434 F.3d 733, 742 (4th Cir. 2006).[1] *See also Cockman v. Circle K Stores Inc*., Case No. 19-1448, 807 Fed. Appx. 268, 2020 U.S. App. LEXIS 17464, 2020 WL 2896576 (4th Cir. Jun 03, 2020) (citing *Baqir* and listing these *prima facie* elements); *Spivey v. Mohawk Esv, Inc*., Case No. 21-1749, 2023 U.S. App. LEXIS 14454, 2023 WL 3918674 (4th Cir. Jun 09, 2023) (citing *Baqir* and listing these *prima facie* elements).

(1) ) Plaintiff is a member of a protected class.

Mr. Reagan is a member of a protected class in that he is over the age of 40 and protected by the ADEA, which prohibits discrimination by federal agencies based on age for employees who are at least 40 years old. *See* 29 U.S.C. §633a(a).  Mr. Reagan noted his membership in a protected class adequately in his Complaint:

> 9. Born in October 1960, Mr. Reagan is a 64-year-old man. He is a member of a protected group by virtue of his age, and he is also a disabled veteran. Mr. Reagan was a longtime, loyal, dedicated employee of the Agency and is a former member of a special forces unit (18 Delta Special Forces Medic with the U.S. Army).

*See* Complaint, Dkt. 60, at para. 9.

(2) Plaintiff suffered an adverse employment action (such as discharge).

Mr. Reagan noted that he was removed (a.k.a. terminated or discharged) from the Agency on June 22, 2021. *See* Complaint, Dkt. 60, at 4-5, paras. 14, 18:

> 14. Mr. Reagan was a federal employee, reporting to his first level supervisor Marc and second level supervisor Johnny (federal employee supervisors at the Agency) for approximately one to one and a half years before Mr. Reagan was removed (terminated) from the Agency on June 22, 2021.

---

[1] *See also Burgess v. Bowen*, Case No. 10-2081, p. 14 (4th Cir. Feb 17, 2012), for the general *prima facie* framework for termination claims under Title VII of the Civil Rights Act: "To establish a prima facie case of discriminatory termination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) in spite of her qualifications and her performance, she was fired; and (4) she was replaced by someone outside her protected class, or otherwise treated differently than similarly situated persons outside the class. *See McDonnell Douglas*, 411 U.S. at 802."

This removal (discharge) in 2021 was an adverse employment action within this *prima facie* element, which mentions discharge as an example of an adverse employment action. *See Loose v. CSRA Inc.*, Case No. 19-2394, 2021 U.S. App. LEXIS 29405 (4th Cir. Sep 29, 2021) (citing *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006)).

> (3) Plaintiff was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action.

In his Amended Complaint, Mr. Reagan described his many years of exemplary service at the Agency. While the details of that service are classified and therefore limited with regard to the facts that Plaintiff could plead, Plaintiff pled unclassified facts in his Complaint to show that he was performing job duties that met the employer's legitimate expectations at the time of the adverse employment action. For instance, Mr. Reagan noted that he was a long-time, loyal, dedicated employee of the Agency who started working for the Agency in 2005 as an instructor and taught various topics such as survival tactics until his removal on June 22, 2021. *See* Amended Complaint, Dkt. 60, at paras. 9-10. Further, Mr. Reagan pled that he had received positive feedback and accolades concerning his performance throughout his 16-year career at the Agency, and while there were no performance evaluations for Mr. Reagan's position at the Agency, he "received positive feedback about his performance from his supervisors for his entire tenure at the Agency, including during the last three years. In his final three years (and throughout his tenure at the Agency), Mr. Reagan received positive comments about his performance from his supervisors as well as positive student critiques. Mr. Reagan established a record of excellent job performance at the Agency." *Id*. at para. 16.

In addition, Mr. Reagan pled that his excellent job performance is further demonstrated by his employment contract being renewed continually throughout his 16-year career at the Agency. *Id*. at para. 17. Finally, Mr. Reagan pled that while working at the Agency, he never received

documentation akin to a negative performance review, or a performance improvement plan, or a performance memo alleging performance deficiencies. *Id*. Mr. Reagan established a record of excellent job performance at the Agency, and he was never informed that he was not meeting the employer's expectations, even in the meeting where his supervisors informed him of his termination. *Id*. at para. 18. When Mr. Reagan was removed on June 22, 2021, the Agency did not indicate that he was not meeting the Agency's expectations at the time of removal, nor had the Agency provided him with prior notice of any major concerns. Specifically, Mr. Reagan noted:

> 18. On or about June 22, 2021, Mr. Reagan had a meeting with his supervisors Marc and Johnny and another federal employee. They informed Mr. Reagan that he was being removed, but they refused to provide any explanation for the removal. Mr. Reagan's supervisors had not raised any concerns with him previously in a formal way, such as formal counseling or anything in writing, and Mr. Reagan had no prior notice of any concerns that would justify his removal. In fact, his second-level supervisor Johnny had sat in on several of Mr. Reagan's classes and had not raised any issues.

*See* Amended Complaint, Dkt. 60, at para. 18.

In Plaintiff's Amended Complaint, Plaintiff is constrained by national security considerations, which limit the content of his Complaint, as noted for example in footnotes 4 and 5 on pages 4 and 7 of his Amended Complaint. Nevertheless, Mr. Reagan pled in his Amended Complaint that he was meeting the employer's legitimate expectations at the time of the adverse employment actions, as he was not instructed otherwise and was never formally counseled or subjected to any formal discipline while working for the Agency for many years. In fact, Mr. Reagan had established a record of excellent performance in his job. *See* Amended Complaint, Dkt. 60, at paras. 9-10, 15-18. As Plaintiff's allegations must be accepted as true, with all reasonable inferences drawn in Plaintiff's favor, Plaintiff has presented sufficient facts concerning *prima facie* element 3, that he was meeting the employer's legitimate expectations at the time of the adverse employment action.

12

(4) Plaintiff's position remained open or was filled by a similarly qualified applicant outside the protected class.

As the Court notes in its Order following Defendant's first motion to dismiss (Dkt. 56), "In some instances, where a plaintiff is alleging differential treatment to raise an inference of age discrimination, courts will substitute the fourth prong and, rather than requiring [laintiff [sic] to allege that he was replaced by a substantially younger individual, require plaintiff to allege that other similarly situated employees who were substantially younger than him were treated more favorably." Under this analysis, Mr. Reagan has met his burden, having alleged differential treatment between him and younger instructors who were over 10 years younger. *See* Amended Complaint, Dkt. 60, at paras. 20-23.

With regard to the fourth prong specifically, Mr. Reagan alleged in his Amended Complaint: "Upon information and belief, Mr. Reagan was replaced by an instructor who was over 10 years younger than he at the time of his removal." *Id.* at para. 20. This meets the burden articulated in the Court's March 17, 2025 Order (Dkt. 56):

> Courts have generally held that an individual who is ten years younger or more constitutes a substantially younger individual. *DeBord v. Wash. Cnty. Sch. Bd.*, 340 F. Supp. 2d 710, 714 (W.D. Va. 2004)*; see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 336–38 (6th Cir. 2003) (citing 34 cases where individuals ten years younger or more were found substantially younger). *Compare Rhmyer v. Yokohama Tire Corp.*, 106 F.3d 391, 1997 WL 14143 at *3 (4th Cir. 1997) (replacement of a 54-year-old by a 41-year old found to be substantially younger), *with Cramer v. Intelidata Tech. Corp.*, 168 F.3d 481, 1998 WL 911735, at *3 (4th Cir. 1998) (replacement of employee by person five years younger found not substantially younger).

As for Defendant's criticism of the language "upon information and belief" (*see, e.g.*, Dkt. 62 at 1-2, 14), that language is standard in complaints and meets the 12(b)(6) pleading standard in the Fourth Circuit. *See, e.g.*, *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Virginia 2015):

> [T]he Court rejects Sterling's motion to the extent it seeks dismissal because Ridenour bases some of his allegations on "information and belief." A plaintiff is generally permitted to plead facts based on "information and belief" if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant. *See Raub v. Bowen*, 960 F.Supp.2d 602, 615 (E.D. Va. 2013) (noting that although "information and belief" pleadings are "tenuous at best," such practice is permitted under Rule 8(a) when relying "on second-hand information to make a good-faith allegation of fact"); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010) ("The Twombly plausibility standard ... does not prevent a plaintiff from pleading facts alleged `upon information and belief where the facts are peculiarly within the possession and control of the defendant") (internal quotation marks and citation omitted); 2-8 Moore's Federal Practice § 8.04[4] (3d ed.) ("Nothing in the Twombly plausibility standard prevents a plaintiff from pleading on information and belief.").

*Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Virginia 2015).

Here, conversations between Mr. Reagan and his former coworkers at the Agency instructed his statement that "[u]pon information and belief, Mr. Reagan was replaced by an instructor who was over 10 years younger than he at the time of his removal." The Agency is in possession of employment records which will prove Mr. Reagan's assertion, but acquisition of such records is the province of discovery and proving this allegation is the province of trial. Mr. Reagan is not required to prove his allegations at the pleading stage; he only needs to allege that he was replaced by an instructor (the same position as him) who was over 10 years younger than he at the time of his removal. Such a statement is sufficient for 12(b)(6) purposes, and Mr. Reagan made this statement in his Amended Complaint, based on his conversations with his former coworkers.

14

Defendant is an intelligence agency and holds information close to its vest, but Plaintiff will acquire specific evidence to prove his allegation through discovery.[2]  At this early stage, Plaintiff has pled an allegation to meet the fourth prong for 12(b)(6) purposes, meeting the notice pleading standards established by *Iqbal* and *Twombly*; and notably, Plaintiff is not required to prove the *prima facie* elements of his case at the motion to dismiss stage. *See McCleary-Evans*, 780 F.3d at 585; *see also Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) ("To survive a motion to dismiss, a plaintiff's factual allegations, taken as true, must 'state a claim to relief that is plausible on its face.' . . . [The allegations in the complaint] need only give the defendant fair notice of what the claim is and the grounds on which it rests.") (*citing Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012); *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)). In his Amended Complaint, Mr. Reagan has stated a plausible claim for relief, providing Defendant with fair notice of the claims and the grounds upon which they rest.  Thus, Defendant's second motion to dismiss should be denied.

## C.  The Court Should <u>Not</u> Dismiss Count II of Plaintiff's Complaint for Failure to State a Claim.

In Defendant's Motion (at 16-20), the Agency argues that the Court should dismiss Plaintiff's ADEA retaliation claim (Count II).  However, Plaintiff alleged sufficient facts in his Complaint to support a plausible claim of retaliation.

---

[2] There has been no discovery in the underlying administrative cases, and no investigation by the Agency of Mr. Reagan's EEO complaint concerning Claim 1 of his Amended Complaint. There was an investigation of Mr. Reagan's second EEO complaint, but that resulted in a heavily redacted Report of Investigation (ROI) that suppresses names and pertinent information through redactions of classified material.  (For Mr. Reagan's first EEO complaint that concerns Claim 1 of his Amended Complaint, the only substantive information produced by the Agency is a redacted, three-page report by the EEO counselor after Mr. Reagan made an informal EEO complaint; it consists of about one page of substantive, yet redacted material.)

As Defendant stated in its Motion to Dismiss (at 16), the ADEA's federal-sector provision "prohibits retaliation against an employee who complains of age discrimination." *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022) (citing 29 U.S.C. § 633a(a); *Gomez-Perez*, 553 U.S. at 477). As with a claim of age discrimination, an employee may prove retaliation through either direct evidence or through the *McDonnell Douglas* burden-shifting framework. *Id.* To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must establish that: "(1) he engaged in a protected activity, (2) he suffered an adverse action, and (3) there is a causal connection between the activity and adverse action." *McGrone v. Austin*, No. 1:22-cv-375, 2022 U.S. Dist. LEXIS 230060, 2022 WL 17833275, at *6 (E.D. Va. Dec. 21, 2022) (citing *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991)).

Defendant does not contest that Mr. Reagan has pled sufficient facts concerning the first two elements, but Defendant raises an issue with regard to the third *prima facie* element, averring that "Plaintiff's retaliation claim fails because his Amended Complaint lacks sufficient factual allegations to establish a causal connection between the filing of the EEO complaint on September 20, 2021, and his alleged termination from the agency project ten months later, in July 2022." *See* Dkt. 62 at 17.

To begin with, Plaintiff notes that the *prima facie* test is for proving his case, but that is not his obligation at this preliminary stage. As noted above, this Court should follow the pleading standards from *Iqbal* and *Twombly*, and not require Plaintiff to prove the *prima facie* elements of his case at the motion to dismiss stage. *See McCleary-Evans,* 780 F.3d at 585. Further, in considering a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiff's allegations as true and draw all reasonable inferences from the facts in the light most favorable to Plaintiff. *Ibarra v. U.S.*, 120 F.3d 472, 472, 473 (4th Cir. 1997). *See also Hall v. DIRECTV,*

*LLC*, 846 F.3d 757, 765 (4th Cir. 2017) ("To survive a motion to dismiss, a plaintiff's factual allegations, taken as true, must 'state a claim to relief that is plausible on its face.' . . . [The allegations in the complaint] need only give the defendant fair notice of what the claim is and the grounds on which it rests.") (*citing Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012); *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015)).

Secondly, although Plaintiff agrees that based on Fourth Circuit precedent, a ten-month gap is generally too lengthy for courts under the Fourth Circuit to infer that a causal connection exists between protected activity and the retaliatory action, the facts of the instant case are distinguishable from much of the precedent. In this case, Mr. Reagan was terminated from the Agency on or about June 22, 2021. *See* Amended Complaint, Dkt. 60, at paras. 10, 18, 24-25. He was not in the workplace after June 22, 2021, and Agency managers did not have the opportunity to retaliate against him. Mr. Reagan was going through an onboarding process remotely but physically went to the workplace on July 28, 2022. *Id*. at para. 26. Mr. Reagan went to the workplace in person on July 28, 2022 to onboard, and this was the first opportunity since June 22, 2021 for Agency managers to retaliate against him. At this first opportunity, Mr. Reagan was retaliated against. This is quite different from an employee being in the workplace for 10 months where a supervisor does not retaliate against the employee every day for 10 months, creating an intervening time period of non-retaliation. In the instant case, Mr. Reagan showed up to the workplace and was retaliated against immediately, at the Agency's first opportunity. Those facts should give rise to an inference of retaliation, as well as the denial of Defendant's motion to dismiss at this stage. *See, e.g.*, *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) ("We assume, without deciding, that in the failure-to-hire context, the employer's knowledge coupled with an adverse

17

action taken at the first opportunity satisfies the causal connection element of the *prima facie* case").

In *Price*, the Fourth Circuit evaluated the causal connection between Price's protected activity and Robbins' decision not to hire him, reasoning that generally the passage of time (nine to 10 months in that case) tends to negate the inference of discrimination, but an adverse action taken at the first opportunity satisfies the causal connection element of the *prima facie* case. *See Price*, 380 F.3d at 213 ("conclud[ing] that Price has established a prima facie case of discrimination because a reasonable trier of fact could conclude that Robbins knew of the protected activity and because Robbins, at the first available opportunity, declined to hire Price") (emphasis added). *See also Templeton v. First Tennessee Bank*, N. A., 424 Fed. Appx. 249, 251, 2011 U.S. App. LEXIS 8379 (4th Cir.2011) (concluding that the district court erred when it determined that plaintiff's retaliation claims should be dismissed at the motion to dismiss stage because too much time had elapsed between plaintiff's harassment complaint and defendants' refusal to rehire her two years later because the employer retaliated against plaintiff upon the employer's first opportunity to do so). *See also Martin v. Mecklenburg Cty*., 151 Fed. Appx. 275, 280; 2005 U.S. App. LEXIS 23262 at *14 (4th Cir.2005) ("A decisionmaker's inconsistent action in violation of well-established policy, rendered at the first opportunity after becoming aware of protected conduct, provides sufficient evidence for a reasonable jury to conclude at the very least that some consideration of this protected conduct played a role in the contested employment decision," permitting an eleven-month gap between protected conduct and alleged retaliation); *see also Johnson v. Scott Clark Honda*, No. 3:13-CV-485-RJC-DCK, 2014 WL 1654128 at *4, 2014 U.S. Dist. LEXIS 57914 at *11 (W.D.N.C. Apr. 25, 2014), *aff'd*, 584 Fed.Appx. 180 (4th Cir.2014) (applying "first opportunity" to employee's request to become a full time employee).

In *Johnson v. Lemonds*, 020416 M.D.N.C, 1:15-c-v410, 2016 U.S. Dist. LEXIS 13218 at *14-16 (February 4, 2016), the magistrate judge faced a similar issue to the instant case in a motion to dismiss evaluation, where defendant argued that too much time had elapsed between the protected activity and adverse action (7 months in that case).  Citing to *Price*, Magistrate Judge Patrick Auld in the Middle District of North Carolina opined that post-termination retaliation plaintiffs can establish causation by showing that, notwithstanding a long delay, the employer took "the first available opportunity" to retaliate after protected activity. *Id*. at *15.  Thus, in finding that plaintiff's pleadings supported plaintiff's contention that defendant retaliated against her at the earliest opportunity, the magistrate judge concluded that plaintiff's pleadings contained sufficient factual allegations of causation to survive a Rule 12(b)(6) motion. *Id*. at *16.  This is directly applicable to the instant case, where Mr. Reagan is alleging that Defendant retaliated against him at the first available opportunity and his Amended Complaint provides the factual allegations concerning his attempt to return to the Agency for a project in 2022 but being summarily dismissed on his first day at the facility when management became aware of his onboarding. Dkt. 60 at paras. 26-29.

In addition, as noted by Defendant (Dkt. 62 at 18), even if a court does not infer retaliation, a plaintiff may establish causation through other evidence.  In these cases, courts have found causation in cases with significant temporal gaps if there is additional evidence of retaliatory animus. *See Reardon v. Herring,* 201 F.Supp.3d 782 (2016); *Lettieri v. Equant Inc*., 478 F.3d 640, 650 (4th Cir. 2007).  Here, Mr. Reagan noted that at the end of the onboarding process at the Agency, he was told that he was not allowed to be on the project "because of what happened on the other range," which was that Mr. Reagan had brought an EEO complaint against the Agency based on his removal in 2021. *See* Amended Complaint, Dkt. 60, at para. 27.  These facts alleged

by Plaintiff must be taken as true and all inferences drawn in Plaintiff's favor, regardless of

Defendant's claims about "pure speculation" (Dkt. 62 at 19).  Notably, Plaintiff is not required to

prove his case at the complaint stage (e.g., the causation element of a retaliation claim), but he

should set forth allegations to support a claim of retaliation.  That is what Mr. Reagan has done.

He has alleged that his protected activity is known at the Agency and that it was referenced when

he was removed from the project in 2022:

26. Concerning this second termination in July 2022, Mr. Reagan had gone through an onboarding process for months and was completing this process at the Agency in person. He went to the Agency facility in person and spent several hours completing the onboarding process.  At this point, Mr. Reagan had passed all security and background checks to gain access to the Agency facility and begin working on the project.

27. At the end of the onboarding process, Mr. Reagan was told by the program manager that the contracting officer's technical representative (COTR) had instructed the program manager that Mr. Reagan was not allowed to be on the project "because of what happened on the other range," which was that Mr. Reagan had brought an EEO complaint against the Agency based on his removal in 2021.[3]

28. Mr. Reagan construed from the comments made to him in 2022 that he was being removed from the 2022 project as a direct result of his EEO activity in 2021.  That is what was conveyed to him in 2022.

29. In addition, on information and belief, the manager who contacted the COTR to remove Mr. Reagan from the 2022 project was aware of his EEO activity, which was well known among the management of the facility.

30. Mr. Reagan's removal from his instructor position at the Agency in 2021, and his subsequent removal from a project in 2022, are not warranted by or based on any misconduct.  The Agency had not given any formal discipline to Mr. Reagan regarding his conduct during his tenure with the Agency.

Amended Complaint, Dkt. 60, at paras. 26-30.

With regard to Defendant's claim that the decision makers should have knowledge of his

protected EEO activity (Dkt. 62 at 20), Plaintiff notes that a decision maker did have knowledge

---

[3]     The complete onboarding process and details are not being provided in this Amended Complaint due to national security reasons.

of his EEO complaint, as it was referenced when he was removed from the project in 2022. *See* Amended Complaint, Dkt. 60, at para. 27-28.    Further, Plaintiff directly pled management knowledge of his EEO complaint in paragraph 29 of his Amended Complaint: "In addition, on information and belief, the manager who contacted the COTR to remove Mr. Reagan from the 2022 project was aware of his EEO activity, which was well known among the management of the facility."

Defendant attacks Plaintiff's well-pled allegations about management knowledge, portraying them to be based upon "speculation and unwarranted inferences." Dkt. 62 at 20. However, Plaintiff has pled management knowledge, complying with the notice pleading requirements of *Iqbal* and *Twombly*, and notably, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *See Byam v. Ocean Enter*. 589, 23-1193 (4th Cir. Feb 26, 2024) (noting that the district court must accept well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor) (citing to *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017).

In sum, Plaintiff has pled sufficient facts to support a plausible claim of retaliation.    Mr. Reagan presented a short and plain statement of the claim showing that Plaintiff is entitled to relief for retaliation under the ADEA and giving fair notice to Defendant, per *Twombly*.    Plaintiff's Amended Complaint does not consist of mere labels and conclusions, nor is it a formulaic recitation of the elements of a cause of action.    Rather, Plaintiff's Amended Complaint provided facts to support a plausible claim of retaliation.

## IV.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court <u>deny</u> Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 61) and allow this case to proceed on

both counts (Count I - age discrimination under the ADEA, and Count II – retaliation under the ADEA).

Dated: July 28, 2025                                    Respectfully submitted,

                                                        /s/ LENORE C. GARON
                                                        LENORE C. GARON
                                                        VSB # 39934
                                                        Law Office of Lenore C. Garon, PLLC
                                                        2412 Falls Place Court
                                                        Falls Church, VA 22043
                                                        Phone: 703-534-6662
                                                        Fax: 703-534-4448
                                                        lenore@lenorecgaron.com

                                                        *Attorney for Plaintiff*

                                                        /s/ DANIEL K. GEBHARDT
                                                        DANIEL K. GEBHARDT
                                                        *Admitted Pro Hac Vice*
                                                        (D.C. Bar No. 975703)
                                                        Solomon Law Firm, PLLC
                                                        1025 Connecticut Avenue, N.W.
                                                        Suite 1000
                                                        Washington, DC 20036
                                                        Phone: 866-833-3529
                                                        Fax: 202-688-1896
                                                        dgebhardt@fedemploylaw.com

                                                        *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint, was served on this 28th day of July 2025 via electronic filing using this Court's CM/ECF system, on Defendant:

Daniel P. Shean, Assistant U.S. Attorney
Virginia State Bar No. 84432
Counsel for Defendant
Office of the United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510-1671

Email: daniel.shean@usdoj.gov

/s/ Lenore C. Garon
Lenore C. Garon