UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

KEVIN REAGAN,

                    Plaintiff,

          v.                                          Civil No. 4:23cv158

JOHN RATCLIFFE, *Director, Central
Intelligence Agency*,

                    Defendant.

## ORDER

Pending before the Court are a Motion to Dismiss for Failure to State a Claim (the "Motion") (ECF No. 61) and a Memorandum in Support thereof (ECF No. 62) filed by Defendant John Ratcliffe, Director of the Central Intelligence Agency ("Defendant"). The Court has determined that a hearing on the Motion is unnecessary, as the issues for decision are adequately presented in the briefs. *See* E.D. Va. Local Civ. R. 7(J). For the following reasons, the Motion (ECF No. 61) is **GRANTED**.

## I.    BACKGROUND

### A.    Factual Background

When ruling on a motion to dismiss for failure to state a claim, courts accept a complaint's well-pled factual allegations as true and draw any reasonable inferences in favor of the plaintiff. *See, e.g.*, *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). The Court is "not so bound with respect to a complaint's legal conclusions." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991) (quoting *District 28,*

1

*United Mine Workers, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979)) (cleaned up). Accordingly, the Court reviews the facts as alleged by Plaintiff Kevin Reagan ("Plaintiff" or "Mr. Reagan") in his Amended Complaint. *See generally* Am. Compl. ¶¶ 7–30, ECF No. 60.

Born in October 1960, Mr. Reagan is a 64-year-old man. *Id.* ¶ 9. He is a member of a protected group by virtue of his age, and he is also a disabled veteran. *Id.* Mr. Reagan was a long-time, loyal, dedicated employee of the Central Intelligence Agency (the "Agency") and is a former member of a special forces unit with the U.S. Army. *Id.* Defendant John Ratcliffe is the Director of the Agency. *Id.* ¶ 3. As such, he has ultimate authority over the actions of the Agency and is sued in his official capacity. *Id.*

Mr. Reagan started working for the Agency in 2005 as an instructor. *Id.* ¶ 10. Mr. Reagan taught various topics such as survival tactics until his removal on June 22, 2021. *Id.* The content of Mr. Reagan's classes was determined by his supervisors, who controlled and authorized the material taught to the students by the instructors, as well as the manner in which the students were taught. *Id.* ¶ 11. The Agency controlled Mr. Reagan's hours, work location, projects, and schedule. *Id.* ¶ 12. All tools, materials, equipment, and uniforms used by Mr. Reagan were furnished by the Agency. *Id.* The Agency provided Mr. Reagan with health benefits, by providing screenings, hearing tests, and flu vaccines every year, and also providing him with access to the clinic just as for other employees. *Id.* Mr. Reagan's supervisor directed him to attend events for federal employees such as retirement parties. *Id.* ¶ 13.

Mr. Reagan was a federal employee. *Id.* ¶ 14. Mr. Reagan reported to his first level supervisor, Marc, and second level supervisor, Johnny, who were federal employee supervisors at the Agency, for approximately one to one and a half years before he was terminated from the Agency on June 22, 2021. *Id.* Throughout his 16-year career at the Agency, Mr. Reagan received positive feedback and accolades concerning his performance. *Id.* ¶ 15. There were no performance evaluations for Mr. Reagan's position at the Agency. *Id.* ¶ 16. Therefore, in the 16 years that Mr. Reagan worked for the Agency, he never received a performance evaluation. *Id.* However, Mr. Reagan received positive feedback about his performance from his supervisors for his entire tenure at the Agency, including during the last three years. *Id.* He also received positive student critiques. *Id.* Mr. Reagan established a record of excellent job performance at the Agency. *Id.* His employment contracts were renewed continually throughout his 16-year career at the Agency. *Id.* ¶ 17. Other instructors with performance issues did not have their employment contracts renewed. *Id.* In addition to his positive performance feedback, Mr. Reagan's continuing work at the Agency demonstrates his positive work performance. *Id.* Finally, while working at the Agency, Mr. Reagan never received documentation akin to a negative performance review, or a performance improvement plan, or a performance memo alleging performance deficiencies. *Id.*

On or about June 22, 2021, Mr. Reagan had a meeting with his supervisors, Marc and Johnny, and another federal employee. *Id.* ¶ 18. They informed Mr. Reagan that he was being removed, but they refused to provide any explanation for the

removal. *Id.* Mr. Reagan's supervisors had not raised any concerns with him previously in a formal way, such as formal counseling or anything in writing, and Mr. Reagan had no prior notice of any concerns that would justify his removal. *Id.* In fact, his second-level supervisor Johnny had sat in on several of Mr. Reagan's classes and had not raised any issues. *Id.*

During his tenure at the Agency, Mr. Reagan observed younger instructors being hired as older instructors were pushed out. *Id.* ¶ 19. These younger instructors were in their 30s and 40s while the older instructors were more than 10 years older. *Id.* For instance, Mr. Reagan was 61 at the time of his removal and was at least 20 years older than younger instructors being hired at that time. *Id.* Upon information and belief, Mr. Reagan was replaced by an instructor who was over 10 years younger than he at the time of his removal. *Id.* ¶ 20. Instructors over 10 years younger than Mr. Reagan were treated more favorably than he. *Id.* ¶ 21. For instance, Mr. Reagan's supervisor Marc asked Mr. Reagan and another older instructor to both work half-time, in order to free up a position for a younger employee to be hired. *Id.* On information and belief, other older instructors were pushed to reduce their hours to half-time as well. *Id.* Besides Mr. Reagan, other instructors over the age of 40 were removed without warning or explanation or were constructively discharged. *Id.* ¶ 22. Older instructors were targeted for removal or a reduction in their working hours, while younger instructors—over 10 years younger—were brought in by management. *Id.* ¶ 23.

Mr. Reagan filed a formal Equal Employment Opportunity ("EEO") complaint with the Agency on September 20, 2021, alleging discrimination on the basis of age concerning his removal on June 22, 2021 (the "First EEO Complaint"), and he received a letter of determination dismissing his complaint on June 30, 2022. *Id.* ¶ 7. The Agency's removal of Mr. Reagan has caused lost salary and benefits, damage to his career and reputation, and lost job opportunities. *Id.* ¶ 24.

In addition to Mr. Reagan's removal on or about June 22, 2021, Mr. Reagan was terminated from a project at the Agency on July 28, 2022. *Id.* ¶ 25. Mr. Reagan had gone through an onboarding process for months and was completing this process at the Agency in person. *Id.* ¶ 26. He went to the Agency facility in person and spent several hours completing the onboarding process. *Id.* At this point, Mr. Reagan had passed all security and background checks to gain access to the Agency facility and begin working on the project. *Id.* At the end of the onboarding process, Mr. Reagan was told by the program manager that the contracting officer's technical representative ("COTR") had instructed the program manager that Mr. Reagan was not allowed to be on the project "because of what happened on the other range." *Id.* ¶ 27. Mr. Reagan alleges that "what happened on the other range" refers to his filing of the First EEO Complaint and further alleges that he was removed from the 2022 project as a direct result of his EEO activity in 2021. *Id.* ¶¶ 27–28. In addition, the manager who contacted the COTR to remove Mr. Reagan from the 2022 project was aware of his EEO activity, which was well known among the management of the facility. *Id.*

¶ 29. Mr. Reagan filed a second EEO complaint at the Agency, alleging discrimination and retaliation concerning this termination in July 2022. *Id.* ¶ 25.

Mr. Reagan's removal from his instructor position at the Agency in 2021, and his subsequent removal from a project in 2022, are not warranted by or based on any misconduct. *Id.* ¶ 30. The Agency had not given any formal discipline to Mr. Reagan regarding his conduct during his tenure with the Agency. *Id.*

### B. Procedural History

On August 2, 2024,[1] Mr. Reagan filed a complaint alleging that the Agency unlawfully discriminated against him because of his age and retaliated against him based upon protected activity (the "First Complaint"), in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"). Compl. ¶ 1, ECF No. 43. On August 14, 2024, the Agency filed its First Motion to Dismiss for Failure to State a Claim (the "First Motion to Dismiss"). Mot. Dismiss, ECF No. 44. On October 28, 2024, after obtaining extensions of time to file, Mr. Reagan filed his memorandum in opposition to the First Motion to Dismiss. Pl. Mem. Opp'n, ECF No. 52-1. On November 11, 2024, the Agency filed its reply. Reply, ECF No. 53. On March 18, 2025, the Court issued an Order granting the First Motion to Dismiss, dismissing the First Complaint without prejudice and noting that the deficiencies in the First Complaint were potentially correctable. Order, ECF No. 56.

---

[1] Mr. Reagan filed his first original complaint on December 20, 2023. Compl., ECF No. 1. As noted in the Court's March 18, 2025 Order, this complaint was later submitted to the Agency's Prepublication Classification Review Board for their review and formally refiled with this Court on August 2, 2024. Order at 5–6, ECF No. 56.

On May 29, 2025, Mr. Reagan filed an Amended Complaint, again alleging that the Agency unlawfully discriminated against him based upon his age and retaliated against him based upon protected activity, in violation of the ADEA. Am. Compl., ECF No. 60. Specifically, "Mr. Reagan is claiming age discrimination with regard to his removal in June 2021 and retaliation with regard to being terminated from a project in July 2022." *Id.* ¶ 24. On June 12, 2025, the Agency filed the instant Motion, alleging that Mr. Reagan has not corrected the pleading deficiencies in his First Complaint. Mot. Dismiss, ECF No. 61. On July 28, 2025, Mr. Reagan filed his memorandum in opposition to the instant Motion. Pl. Mem. Opp'n, ECF No. 67-1. On August 8, 2025, the Agency filed its reply. Reply, ECF No. 70. The Motion is ripe for adjudication.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An adequate claim requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A threadbare recitation of the "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Although the truth of the facts alleged is assumed, and the facts are taken in the light most favorable to the plaintiff, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570 (internal citations and footnote omitted). A complaint may survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (internal quotation marks omitted).

## III.    ANALYSIS

Mr. Reagan claims that he was discriminated against based upon his age when he was fired by the Agency in June 2021 (Count One), and retaliated against based upon his protected activity when he was terminated from a project in July 2022 (Count Two). Am. Compl. ¶¶ 31–35, ECF No. 60. The Court considers each claim in turn.

### A.    Count I: Age Discrimination for the June 2021 Removal

First, Plaintiff claims that the Agency unlawfully terminated his employment in June 2021 because of his age, in contravention of the ADEA. The ADEA prohibits age discrimination in employment. Specifically, 29 U.S.C. § 633a(a), referred to as the federal-sector provision of the ADEA, provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."

A plaintiff may prove age discrimination in two ways: (1) by presenting direct evidence of discrimination or (2) through the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Song v. Becerra*, No. 20-1554, 2021 WL 3732961, at *1 (4th Cir. Aug. 24, 2021). However, to survive a Rule 12(b)(6) motion to dismiss for failure to state an ADEA claim, a plaintiff is not required to plead a prima facie case of discrimination pursuant to the burden-shifting framework. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (holding that "an employment discrimination plaintiff need not plead a prima facie case of discrimination"). Rather, he must plausibly "allege facts to satisfy the elements of a[n]

9

[ADEA] cause of action." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). The elements of an ADEA action are that the plaintiff (1) is over the age of 40, and (2) experienced discrimination by a federal employer (3) because of his age. *See* 29 U.S.C. § 633a(a).

However, to assess the plausibility of the plaintiff's claims at the pleading stage, the Court "may look to the requirements of a prima facie case as a guide in assessing the plausibility of [a] plaintiff's claim for relief." *Anthony D. Craft v. Fairfax Cnty. Gov't*, No. 1:16cv86, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016). A prima facie case requires the plaintiff to allege that: "(1) he was a member of the protected class, namely, individuals who are at least 40 years of age; (2) he was performing his job duties to his employer's legitimate expectations at the time of termination; (3) he was terminated; and (4) he was replaced by a substantially younger individual." *Arthur v. Pet Dairy*, 593 F. App'x 211, 216–17 (4th Cir. 2015) (internal quotation marks omitted). In some instances, where a plaintiff is alleging differential treatment to raise an inference of age discrimination, courts will substitute the fourth prong and, rather than requiring plaintiff to allege that he was replaced by a substantially younger individual, require plaintiff to allege that other similarly situated employees who were substantially younger than him were treated more favorably. *See, e.g., Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294 (4th Cir. 2006).

Mr. Reagan has plausibly alleged that he is a member of a protected class and that he suffered an adverse employment action. Mr. Reagan is a 64-year-old man. Am. Compl. ¶ 9, ECF No. 60. Title 29 U.S.C. § 633a(a) prohibits discrimination by

10

federal agencies against employees who are at least 40 years old. As such, Mr. Reagan is a member of a protected class for purposes of the ADEA. Furthermore, Mr. Reagan was removed from his position with the Agency on June 22, 2021. Am. Compl. ¶ 18, ECF No. 60. Removal from a position constitutes an adverse employment action. *See Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 469 (4th Cir. 2015) ("[T]ermination qualifies as an adverse employment action."). As such, the Court will consider whether Plaintiff has alleged sufficient facts such that the Court can draw a reasonable inference that (1) he was performing his job duties at a level that met his employer's legitimate expectations at the time of his termination; and (2) he was replaced by a substantially younger individual or that other similarly situated employees who were substantially younger than him were treated more favorably.

> 1. *Plaintiff has pled sufficient facts to raise the inference that he was satisfactorily performing his job duties at the time of removal.*

To raise the inference that a plaintiff's termination was because of age, plaintiffs should allege sufficient facts to plausibly demonstrate that they were performing their job duties satisfactorily. An affirmative allegation of satisfactory job performance is necessary—an assertion that the plaintiff had not been reprimanded for poor performance, or lacked performance problems, is not sufficient. *See, e.g., Lambert v. Whiting Turner Contractor*, No. 1:15cv958, 2016 WL 2946176, at *4 (E.D. Va. May 19, 2016) (granting motion to dismiss where plaintiff provided no facts about his work performance, only mentioning that he requested lighter duties after developing

hernia); *Beg v. Mayorkas*, No. 1:22cv1224, 2023 WL 8622289, at *2 (E.D. Va. May 2, 2023) (granting motion to dismiss where plaintiff stated "that he did not have 'any performance problem[s]' for 'most' of the employment period," as he did not affirmatively allege that he was meeting expectations). Alleging satisfactory performance reviews up until termination, however, is "more than sufficient." *See, e.g., Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 27 (1st Cir. 1998) (finding sufficient evidence of satisfactory job performance where plaintiff submitted 16 years of performance reviews, wherein he received acceptable rankings and was rated as "met expectations" for all categories of work).

Here, Mr. Reagan alleges sufficient facts to raise the inference that he was meeting his employer's legitimate expectations at the time of his removal. Mr. Reagan states that throughout his 16-year career at the Agency, he received positive feedback and accolades concerning his performance. Am. Compl. ¶ 15, ECF No. 60. While the Agency did not conduct formal performance evaluations during his tenure, Mr. Reagan received positive feedback about his performance from his supervisors for his entire tenure, including during the last three years. *Id.* ¶ 16. He also received positive student critiques. *Id.* Here, as in *Brennan*, Mr. Reagan has alleged satisfactory performance reviews up until his termination.

> 2. *Plaintiff has not pled sufficient facts to raise the inference that he was replaced by a substantially younger individual.*

In Plaintiff's Amended Complaint, he states, "[u]pon information and belief, Mr. Reagan was replaced by an instructor who was over 10 years younger than he at the time of his removal." Am. Compl. ¶ 20, ECF No. 66. No further facts are provided.

This is a "mere threadbare recital[] of the cause of action for age discrimination under the ADEA, and do[es] not suffice to plead a claim." *Britt v. Brennan*, No. 19cv401, 2020 WL 1701711, at *5 (D. Md. Apr. 8, 2020). It is completely devoid of any factual enhancements that would allow the Court to "raise a right to relief above the speculative level." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020). Mr. Reagan seems to recognize this deficiency, and attempts to cure it in his memorandum in opposition to the Motion wherein he states that "conversations between Mr. Reagan and his former coworkers at the Agency instructed his statement that '[u]pon information and belief, Mr. Reagan was replaced by an instructor who was over 10 years younger than he at the time of removal.'" Pl. Mem. Opp'n at 14, ECF No. 67-1. "A plaintiff, however, is bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint." *Grant v. Bowers*, No. 1:22cv330, 2023 WL 2392729, at *1 n.1 (E.D. Va. Mar. 6, 2023) (internal quotation marks omitted). Accordingly, Mr. Reagan has not alleged sufficient facts to raise the inference that he was replaced by a substantially younger individual.

   3.   *Plaintiff has not pled sufficient facts to raise the inference that similarly situated employees who were younger than him were treated more favorably.*

Courts in this district and the Fourth Circuit have been unambiguous—a plaintiff who relies on comparator evidence to state a claim of discrimination must also plead that the alleged comparators are sufficiently similar to the plaintiff—even at the motion to dismiss stage. *See, e.g., Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (affirming district court's grant of motion to dismiss and stating, "[w]here a plaintiff attempts to rely on comparator evidence to establish

13

circumstances giving rise to an inference of unlawful discrimination, however, [t]he similarity between comparators . . . must be clearly established in order to be meaningful.") (internal quotation marks omitted); *Aljizzani v. Middle E. Broad. Networks, Inc.*, No. 1:22cv1321, 2023 WL 5017969, at *3 (E.D. Va. Aug. 7, 2023) (granting defendant's motion to dismiss and stating that "[a]lthough a plaintiff is not required to identify a comparator to prove a discrimination claim, if he relies on comparator evidence to make his claim, he must show that the alleged comparators are sufficiently similar to himself"); *Williams v. Newport News Sch. Bd.*, No. 4:20cv41, 2021 WL 3674983, at *10 (E.D. Va. Aug. 19, 2021) ("On a motion to dismiss, the [p]laintiff must allege sufficient facts demonstrating a similarly situated comparator."). "Comparators need not be identical; rather, they must be similar in all *relevant* aspects, such as conduct, performance, and qualifications." *Emami v. Bolden*, 241 F. Supp. 3d 673, 680 (E.D. Va. 2017) (internal quotation marks omitted); *see also Aljizzani*, 2023 WL 5017969, at *3 ("Factors rendering comparators similar include whether they dealt with the same supervisor, were subject to the same standards and engaged in the same conduct.") (citation modified).

Here, Plaintiff has not pleaded sufficient facts regarding his comparators. Paragraphs 19 to 23 in the Amended Complaint allege facts relating to Mr. Reagan's comparators.[2] Am. Compl. ¶¶ 19–23, ECF No. 60. These paragraphs do not allege

---

[2] Paragraph 21 provides that "Instructors over 10 years younger than Mr. Reagan were treated more favorably than he. For instance, Mr. Reagan's supervisor Marc asked Mr. Reagan and another older instructor to both work half-time, in order to free up a position for a younger employee to be hired. On information and belief, other older instructors were pushed to reduce their hours to half-time as well." Am. Compl.

that the comparators dealt with the same supervisor, were subject to the same standards, engaged in the same conduct, performed similarly, or had similar qualifications. Therefore, Mr. Reagan has not stated a claim for age discrimination based upon comparator evidence.

*    *    *

Mr. Reagan has not sufficiently alleged that he was replaced by a substantially younger individual, nor that his comparators were similarly situated to him. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted based upon his June 2021 removal, and Defendant's Motion as to Count I is **GRANTED**.

## B.    Count II: Retaliation Based on the July 2022 Removal

Plaintiff also alleges that the Agency unlawfully removed him from a project in July 2022 in retaliation for protected activity—the filing of the First EEO Complaint—in contravention of the ADEA. *See* Am. Compl. ¶¶ 25–30, ECF No. 60. The Supreme Court has held that a federal employee who files an age discrimination complaint, and thereafter suffers retaliation due to that complaint, can assert a claim under the federal-sector provision of the ADEA. *See Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008). For claims of retaliation to survive dismissal, however, "it is not sufficient for plaintiff to plead that he . . . participated in a protected activity and was not hired. Instead, he must plead facts that support a plausible claim that defendant's

---

¶ 21, ECF No. 60. While not specifically alleged, the Court acknowledges that it appears that the younger employee referred to in this paragraph had the same supervisor as Mr. Reagan—Marc. However, the factual allegations are still deficient regarding whether the younger employee was subject to the same standards, engaged in the same conduct, performed similarly, or had similar qualifications as Mr. Reagan.

failure to hire him was *caused by* the protected characteristic or activity." *Fitten v. McCarthy*, No. 1:20cv676, 2021 WL 622432, at *5 (E.D. Va. Feb. 17, 2021) (emphasis added). Again, courts regularly look to the prima facie elements of retaliation to determine whether a plaintiff has sufficiently pled his claim to this standard:

> [I]n assessing whether a plaintiff plausibly stated a claim for ADEA or Title VII retaliation, the United States Court of Appeals for the Fourth Circuit often speaks of a prima facie case of retaliation[.] Additionally, in determining whether a complaint plausibly stated a claim for retaliation, the Fourth Circuit (recently and repeatedly) has relied on decisions rendered on summary judgment that analyze the prima facie elements of a retaliation claim.

*Connelly v. Guilford Cnty. Schs.*, No. 1:24cv492, 2025 WL 551896, at *6 (M.D.N.C. Feb. 19, 2025) (internal quotation marks and citations omitted). To establish a prima facie case of retaliation, a plaintiff must prove: "(1) that []he engaged in protected activity; (2) that the employer took adverse employment action against h[im]; and (3) a causal connection existed between the protected activity and the adverse action." *McNairn v. Sullivan*, 929 F.2d 974, 980 (4th Cir. 1991).

Plaintiff readily meets the first and second elements. The Fourth Circuit has found that filing an EEO complaint constitutes protected activity. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) ("[Plaintiff's] filing of the EEO complaint was protected activity[.]"). Mr. Reagan filed an EEO complaint, which constitutes protected activity. Am. Compl. ¶ 7, ECF No. 60. Furthermore, as to the second element, "[t]ermination, failure to hire, and failure to renew an employment agreement all constitute adverse employment actions." *Leonard v. Trs. of Cleveland Cmty. Coll.*, No. 1:17cv296, 2019 WL 2076566, at *5 (W.D.N.C. May 9, 2019). Therefore, Mr.

Reagan suffered an adverse employment action when the Agency declined to onboard him onto a project on July 28, 2022. Am. Compl. ¶ 25, ECF No. 60.

With respect to the third element, to allege a causal connection, "a plaintiff can either show a temporal proximity between the protected activity and adverse action, or that other relevant evidence indicates continuing retaliatory conduct and animus toward the plaintiff." *Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023) (internal quotation marks omitted). Alternatively, if a plaintiff cannot demonstrate temporal proximity, some courts consider whether the plaintiff was re-taliated against "at the first opportunity." *Price v. Thompson*, 380 F.3d 209, 211–212 (4th Cir. 2004).

### 1.    *Temporal Proximity*

When a plaintiff points solely to temporal proximity to allege causation, that proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). "Although there is no 'bright-line rule' for when temporal proximity helps or hurts a cause of action for retaliation, a two-month temporal gap 'between [] notice of the complaint and the adverse employment action is sufficiently long  so as to weaken significantly the inference of causation between the two events[.]'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (quoting *King*, 328 F.3d at 151 n.5 (noting that a gap just over two months between supervisor learning of protected activity and termination weakened the inference of causation)) (internal citations omitted). As a general rule, "[o]ften the passage of a few weeks is sufficiently proxi-mate to infer causation, a few months weakens the inference, and six months or more

is too temporally remote to infer causation." *Allen v. Stephens*, No. 2:22cv388, 2024 WL 1204098, at *30 (S.D. W. Va. Mar. 20, 2024). Here, Mr. Reagan filed the First EEO Complaint on September 20, 2021. Am. Compl. ¶ 7, ECF No. 60. The Agency thereafter terminated him from a project on July 28, 2022, *id.* ¶ 25, which is a ten-month gap. Mr. Reagan therefore cannot allege retaliation based upon temporal proximity alone.

### 2.    *"First Opportunity" Retaliation*

Mr. Reagan asserts that July 28, 2022 was his first time physically in the workplace for ten months, and that he was retaliated against at the "first opportunity":

> In this case, Mr. Reagan was terminated from the Agency on or about June 22, 2021. He was not in the workplace after June 22, 2021, and Agency managers did not have the opportunity to retaliate against him. Mr. Reagan was going through an onboarding process remotely but physically went to the workplace on July 28, 2022. Mr. Reagan went to the workplace in person on July 28, 2022 to onboard, and this was the first opportunity since June 22, 2021 for Agency managers to retaliate against him. At this first opportunity, Mr. Reagan was retaliated against.

Pl. Mem. Opp'n at 17, ECF No. 67-1 (internal citations omitted). However, Mr. Reagan fails to explain why the Agency did not have a prior opportunity to retaliate against him, or why his physical presence in the workplace was necessary for the Agency to retaliate against him. If the Agency wanted to retaliate against him, why would it begin onboarding him onto another project in the first place?

The cases cited by Mr. Reagan in support of the retaliation-at-first-opportunity principle are inapposite to his case. In *Price v. Thompson*, the plaintiff applied for a job at the National Institutes of Health, and when he wasn't hired, filed an EEO

complaint alleging that he had been discriminated against in the hiring process. 380 F.3d at 211–212. When the plaintiff applied for a second job and again wasn't hired, the Fourth Circuit determined that the plaintiff had established a prima facie case of retaliation because "at the first available opportunity, [defendant] declined to hire [plaintiff]." *Id.* at 213. Here, pursuant to *Price*, the agency's first opportunity to retaliate against Mr. Reagan would have been by declining to onboard him onto the new project.

In *Martin v. Mecklenburg County*, the Fourth Circuit found that the employer discharged the employee as soon as he learned about the employee's protected conduct— at the first opportunity. 151 F. App'x 275, 280–81 (4th Cir. 2005). Here, Mr. Reagan filed his first EEO complaint on September 20, 2021. He was thwarted from completing the onboarding process in July 2022, and alleges that his EEO activity was "well known among the management of the facility." Am. Compl. ¶ 29, ECF No. 60. Such facts contradict a finding that, as in *Martin*, the Agency retaliated against Mr. Reagan at the first opportunity.

In *Johnson v. Scott Clark Honda*, Scott Clark Honda employed plaintiff as a shoe-shiner, and briefly discussed the possibility of hiring him as a full-time sales associate, but upon hearing that plaintiff had filed a discrimination claim against another former employer, informed plaintiff that Scott Clark Honda "no longer needed his services." No. 3:13cv485, 2014 WL 1654128, at *4 (W.D.N.C. Apr. 25, 2014). Again, Mr. Reagan alleges that his EEO activity was "well known among the

management of the facility" and yet management still onboarded Mr. Reagan to a new project "for months"—making the comparison to *Scott Clark Honda* inapposite.

In *Johnson v. Lemonds*, the plaintiff had previously filed a discrimination complaint against her former employer. No. 1:15cv410, 2016 WL 447494, at *1 (M.D.N.C. Feb. 4, 2016). As soon as her former employer learned of Johnson's new place of employment, the former employer called her new employer and warned the new employer that Johnson could "get th[e] company closed down." *Id.* at *6. This constituted retaliation at the first opportunity. *Id.* Those facts are incomparable to Mr. Reagan's.

The closest case cited by Mr. Reagan is *Templeton v. First Tennessee Bank, N.A.*, where the Fourth Circuit concluded that:

> [T]he district court erred when it determined that Templeton's retaliation claims should be dismissed at the motion to dismiss stage because too much time had elapsed between Templeton's harassment complaint and Defendants' refusal to rehire her. Because Templeton resigned her employment shortly after she complained of harassment, Templeton was retaliated against, if at all, upon the employer's first opportunity to do so, *i.e.*, when Templeton expressed her interest in being rehired approximately two years after her resignation.

424 F. App'x 249, 251 (4th Cir. 2011). The district court noted that two years after her initial resignation from a bank due to sexual harassment and retaliation, a manager at the bank contacted plaintiff and asked her to return for a new role. *Templeton v. First Tenn. Bank, N.A.*, No. 9cv3280, 2010 WL 2292493, at *1 (D. Md. June 3, 2010). Shortly thereafter, Templeton learned that the President of the bank had accused her of having "issues with management," and the President stopped the rehiring process. *Id.* The Fourth Circuit found that this constituted retaliation at first opportunity, despite the two-year temporal gap between her resignation and the rehiring process.

20

*Templeton*, 424 F. App'x at 251. Mr. Reagan has not pled such "first opportunity" facts for the Court to infer that his onboarding process at the agency was thwarted because management suddenly learned of his rehiring process and stopped it due to his "issues with management." Mr. Reagan's onboarding process was months long. Am. Compl. ¶ 26, ECF No. 60. Moreover, Plaintiff alleges that it was stopped "because of what happened on the other range." *Id.* ¶ 27. It would be pure speculation for the Court to assume that this statement refers to Mr. Reagan's EEO activity. From that statement alone, the Court cannot reasonably infer that his onboarding process was stopped due to his EEO complaint. In *Templeton*, it was clear from the face of the complaint that plaintiff's "issues with management" referred to her former claims of sexual harassment and retaliation. Mr. Reagan has not demonstrated that he was retaliated against at the first opportunity.

### 3.    *Continuing Retaliatory Conduct and Animus*

In the alternative, Plaintiff could allege continuing retaliatory conduct and animus. *See Tankesley v. Vidal*, No. 1:21cv1448, 2023 WL 4273763 at *1 (E.D. Va. June 29, 2023) (denying motion to dismiss when plaintiff alleged pattern of retaliation[3]); *Widmer v. Austin*, No. 1:21cv748, 2022 WL 2959710, at *4 (E.D. Va. July 26, 2022)

---

[3] Additional facts regarding the pattern of retaliation can be found in earlier order in the same case: "The Amended Complaint describes Jones as 'angered' by Anna Tankesley's assertion of her rights under the Rehabilitation Act and from that point on Jones began (i) requiring weekly status reports; (ii) mandating weekly meetings; (iii) denying leave requests; (iv) questioning Anna Tankesley's mental abilities; (v) attempting to suspend Anna Tankesley; (vi) threatening Anna Tankesley's job; (vii) issuing a letter of reprimand; and (viii) ultimately removing Anna Tankesley's job duties." Order at 10–11, *Tankesley v. Vidal*, No. 1:21cv1448 (E.D. Va. June 17, 2022), ECF No. 34.

(denying motion to dismiss for Title VII retaliation claim when employer shorted plaintiff $6,408 in pay, reassigned her to new supervisor, searched her desk for hours, downgraded her performance, and delayed the start to her joint duty assignment). In *Widmer*, the court specifically noted that while it found much of that conduct not materially adverse on its own, "[t]aken together, . . . [p]laintiff plausibly alleges a campaign of retaliatory harassment." *Id.* at 5; *see also Newell Carter Bank & Tr.*, No. 4:21cv7, 2022 WL 801601, at *6 (W.D. Va. Mar. 15, 2022) (finding sufficient allegations of continuing retaliatory conduct when employer asked plaintiff about plans to retire (despite her not having any plans to do so), plaintiff faced false accusations from human resources, and plaintiff was fired for a small mistake).

Mr. Reagan has alleged no such pattern of retaliation. In fact, he alleges the opposite. Though Mr. Reagan was terminated from his position in June 2021, the Agency onboarded him to a new project "for months" prior to July 2022. Am. Compl. ¶ 26, ECF No. 60. He does not allege that even a single comment was made during these months of onboarding with respect to his First EEO Complaint, which had been ongoing since September 20, 2021. *Id.* ¶ 7. On July 28, 2022, Mr. Reagan "went to the Agency facility in person and spent several hours completing the onboarding process. At this point, Mr. Reagan had passed all security and background checks to gain access to the Agency facility and begin working on the project." *Id.* ¶ 26. Then, "[a]t the end of the onboarding process, Mr. Reagan was told by the program manager that the contracting officer's technical representative (COTR) had instructed the program manager that Mr. Reagan was not allowed to be on the project 'because of what

happened on the other range,' which was that Mr. Reagan had brought an EEO complaint against the Agency based on his removal in 2021." *Id.* ¶ 27. Furthermore, "Mr. Reagan construed from the comments made to him in 2022 that he was being removed from the 2022 project as a direct result of his EEO activity in 2021. That is what was conveyed to him in 2022." *Id.* ¶ 28. Mr. Reagan's construal of comments is not a factual allegation. Without further details to support this conclusion, the Court finds this to be an unwarranted inference, and this Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.,* 213 F.3d at 180. Mr. Reagan was employed with the Agency for 16 years. The Court declines to guess "what happened on the other range" during this 16-year period. These circumstances do not suggest a pattern of retaliation.

*   *   *

Plaintiff has made allegations which suggest a sheer possibility that the Agency's failure to hire him on the July 2022 project was caused by his filing of the First EEO Complaint. An adequate claim requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 556 U.S. at 768. Accordingly, Defendant's Motion as to Count II is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, the Motion (ECF No. 61) is **GRANTED**. The Amended Complaint is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to

close this case. The Clerk is further **REQUESTED** to forward a copy of this Order to

counsel of record for all parties.

      **IT IS SO ORDERED.**

                                            /s/
                                   Arenda L. Wright Allen
                                United States District Judge

December 31, 2025
Norfolk, Virginia

24